Chief Justice Robertson
delivered the Opinion of the Court.
This is an action of ejectment, in which the appellees, who were defendants in the circuit court, obtained two verdicts ; and this appeal is prosecuted to reverse the judgment on the last verdict.
The appellees insist, first, that the circuit court erred, to their prejudice, in setting aside their first verdict, and that, therefore, were it admitted that their judgment on the last verdict was erroneous, there should be no reversal, because the only consequence would be the same judgment on the first verdict. Second, that there is no error in the judgment on the last verdict.
The first verdict was set aside on the ground that if was not authorized by the evidence. We are inclined to the opinion, that the judgment granting the new trial, should not have been disturbed, had the appellants succeeded afterwards. But we are also strongly inclined to *388 the opinion, that a second verdict upon the same evidence should not have been set asitle; and therefore we are clearly satisfied, that, as the facts proved by the appel-lees, on the last trial, were much more favorable to their defence, than those were which they established on the first trial, the circuit court did not err in overruling the motion for a third trial, unless there was some material error to the prejudice of the appellants in the progress of the last trial. They insist that the circuit court erred in admitting incompetent testimony, and in misinstru'cting the jury. Whether there was any such error committed by the court is the only remaining and more important subject of enquiry.
The fact, that an agent had exceeded his authority in selling and conveying land, and thereby incurred a liability, does not render him incompetent, as a witness, in a suit for the land, by persons,ivho do not derive their title from his principal, as his liability would be the same whatever the ,event of the suit. If the motive for enforcing the liability would be lessened by. a verdict for theparty calling him, it might affect his credibility. In a suit (for the land), between his con stituent, and those claiming under his deed, he wouldbe incompetent.
I. The only objection which has been made to the competency of the testimony, was to that of one Van Morgan, who had, as the agent, and in the name of his mother, Drucilla Thornburgh, sold and conveyed the land, or a part of the land, in contest, and which the appellees claim to have derived from that conveyance. The objection to his competency (as specified) is, that he had no authority to make the sale, and that, therefore, he was interested in the event of this suit. We can perceive no such interest. It may be true, that, by a proper construction of his power, his authority was inapplicable to this particular tract of land, and that, therefore, he might be responsible for transcending his delegated power. But that responsibility does not depend on the event of this suit, nor can it be directly or necessarily affected by this judgment. He maybe made equally accountable whatever may be the event of this suit It is true, that the success of the appellees may possibly diminish the motive for enforcing that liability, but it cannot effect its continued existence, or impair or diminish it. And, therefore, if his want of authority to sell the land could have had any effect on his testimony, it could have effected only his credibility. The defence of the appellees could not have been affected by the validity or invalidity of his authority to make the conveyance, nor was it material to him whether his constituent, <?r the appellants, had the better right to the land. In a suit between her, and his alienee, Van Morgan would *389 have been interested ; but he has no legal interest in this suit.
Instructions— that it the jury found dUvu t’s possession was adverse,and had been so held by them and those under whom they claimed, uninteruprediy, for ¿Üyoais.tho law woo for them — approved, as the deduction of law, from facts that the proof conduced to establish.
II. The only instruction which we deem it necessary to notice, is that numbered 6, and on which the merits of the case depended. It is in these words : — “ That if the jury believe from the evidence, that Andrew Swear-ingen, for and in behalf of his sister, Drucilla Thorn-burgh, and as her agent, took possession of the land as her property, twenty years before the commencement of this suit, and placed tenants on said land, with her approbation and for her benefit, and to hold possession for her, and that the possession of the said land has continued, adversely to the title of Thomas Swearingen the second, in the tenants of said Drucilla Thornburgh and those claiming under her, uninterruptedly, ever since the first beginning of said possession, and that such possession has been transferred to the defendants, the law is for them, and the jury ought to find for the defend-« ants.”
The instruction was not abstract, because there was some evidence tending, in some degree, to establish every fact hypothetically assumed. And, as the appellees, according to the facts stated, stood in the same attitude as that in which Drucilla Thornburgh should he deemed to have been, had she, instead of others claiming under her, occupied the land for more than twenty years immediately preceding the institution of this suit, and as it is evident also, that, as the only legal title asserted by the appellants was derived from “ Thomas Swearingen, the second,” any adversary possession which would have barred him, must equally bar them, who did not acquire his title until after the statute of limitations (if it ever ran at all) had commenced running ; therefore, the instruction seems to be nothina more or less than the deduction of law from the hypothetical facts.
We have already suggested, that thé instruction was not, in any respect, abstract. But as the hinge on which the whole case turns, is the legal deduction from the facts which the proof tended to establish as to the ciiar~ aclcr of the possession, we will briefly consider that matter,
A devisee being entitled,uy will, to a specific quantity of laud, to be allotted to her ; the allotment having been made, and possession taken, to hold in severalty: held, that — whether, the land so allotted was such as passed by the will, or, being acquired after its publication, descended to the heir — the possession so taken and held by the devisee, was adverse to the heir, co-devi-sees and all others, and protected by the statute.
The question is whether, admitting every thing whic^i the facts conduced to prove, the possession should be deemed to have been adverse to the “ title” of “ Thomas Swearingen, the second.”
The land in controversy was granted to Thomas Swearingen (the elder, or first,) in 1785. He had other Kentucky lands. By his will, proved in 1787, in Virginia, where he lived and died, he devised four hundred acres of his Kentucky lands to his daughter, Drucilla Thornburgh, “to be allotted to herand then devised the residue of the same lands to all his children, five in number, and of whom Thomas, “ the second,” and Andrew were two. The latter devise is in these words: — “ It is also my will, that all the land that a title shall be obtained for,, by virtue of my warrants and claims on the western waters, that is not otherwise disposed of, be divided among my said five children.” The will was. published on the 15th of October, 1780, and the land warrant, (which was a Treasury warrant,) on which the title to the land now in contest is founded, was not issued until the 13th of December, 1781.
The will did not pass any land to which the testator had no claim at the date of its publication, unless the words — “ title shall be obtained for by virtue of my warrants” — should be construed as importing an intention to devise all the land which might be appropriated under warrants which he then had, or should afterwards obtain. And if the tract in controversy did not pass by the will, it descended to Thomas, “ the second,” by the1 law of primogeniture, in full force at the time of the testator’s death. There is reason to believe that all his children, — Thomas as well as the others, — believed, until within a few years past, that all the land to which the testator had acquired any title before his death, passed by his will. And the testimony tended to prove, that the tract which was appropriated tinder the warrant which was issued after the publication of the will, was allotted to Drucilla Thornburgh, for her four hundred acres specifically devised.
It is not material in this case, whether this tract passed to the five children by the will, or descended to *391 Thomas. A decision of that point would not affect the right of the appellants to recover, except as to quantity. Their claim is derived from the will of Thomas, “ the second,” and a deed (dated 1823) from Andrew Swearingen, who had, in 1808, or 9, bought from Thomas all his interest in “the Kentucky lands,” and had, in the latter year, reconveyed the same interest to Thomas, by deed of mortgage.
It seems clear to us, that if, as the jury must have found, Drueilla Thornburgh, in fact, held and claimed the land as a devisee and in severalty, she held it adversely to the independent title of Thomas, as heir, (even though there may have been a mistake as to her right, or as to Thomas’s) and adversely to the claim of her co-devisees. And therefore, whether Thomas owned the whole tract, as heir, or only a portion, as a co-devisee, the instruction of the court was applicable to the facts, and was the deduction of law from that which they tended to prove ; and which, whatever may be the preponderance of probabilities, the jury had a right to find.
Wherefore, the judgment must be affirmed.